**Rev. Fred SHUTTLESWORTH, Plaintiff,**

**v.**

**HOUSING OPPORTUNITIES MADE EQUAL, et al., Defendants.**

**No. C–1–94–352.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 8, 1994.

Arthur Charles Church, Cincinnati, OH, for Fred L. Shuttlesworth.

Frederick Mason Morgan, Jr., Cincinnati, OH, for Housing Opportunities Made Equal of Greater Cincinnati Inc., Housing Assistance Legal Fund Inc., Karla Irvine.

Wilson G. Weisenfelder, Jr., Robert Frederic Brown, Rendigs Fry Kiely & Dennis, Cincinnati, OH, for Monica R. Bohlen, Michael J. Mooney.

Jan Martin Holtzman, Dept. of Justice, Cincinnati, OH, for Charles Jung.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon three motions to dismiss filed on behalf of Defendants Monica R. Bohlen and Michael J. Mooney (Doc. 2); Housing Opportunities Made Equal, Inc. ["HOME"], Housing Assistance Legal Fund, Inc. ["HALF"] and Karla Irvine [collectively, "the HOME Defendants"] (Doc. 4); and Charles Jung (Doc. 5), as well as upon a motion by the HOME Defendants for sanctions pursuant to Fed.R.Civ.P. 11. (Doc. 7). In the alternative, Defendant Jung also moves for summary judgment as to the claims against him. (Doc. 5).

Defendants Bohlen and Mooney also request oral argument on their motion. (Doc. 2). As this Court is not required to, nor does it, routinely grant oral argument on motions to dismiss, such request hereby is denied. The Court thus renders this decision based

upon the motions, memoranda and other supporting documentation of record.

### Procedural History/The Parties' Claims

On May 9, 1994, Plaintiff filed a complaint in this Court, setting forth claims against the above-named movants and two other individuals, Patricia and Jonathan Patterson. (Doc. 1). Plaintiff alleges that all such Defendants conspired among themselves and with others to injure Plaintiff's reputation by falsely accusing him of sexually harassing female tenants of certain rental properties he owned. The complaint asserts federal claims under both the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1961, *et seq.*, and 42 U.S.C. § 1983 (*see* Doc. 1, ¶¶ 18–27), as well as a state law claim that appeared to be for malicious prosecution. (Doc. 1, ¶¶ 28–35).

On July 8, 1994, Defendants Bohlen and Mooney, and Defendants HOME, HALF and Irvine, filed similar but separate motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Docs. 2, 4). On July 11, 1994, Defendant Charles Jung followed with his motion to dismiss, or alternatively, for summary judgment, echoing many of the same arguments. (Doc. 5). All argue that Plaintiff's complaint fails to state a claim upon which relief can be granted against them.

As to Plaintiff's RICO claim, Defendants separately and/or collectively argue that Plaintiff failed to adequately plead the existence of a RICO enterprise; failed to allege that certain individuals participated in the operation or management of any such enterprise; and failed to plead viable predicate acts or sufficient relationship and continuity, as is necessary in order to establish a pattern of racketeering activity. Specifically, they urge that Plaintiff's complaint fails to allege indictable fraud, bribery, wire fraud or mail fraud offenses. They also argue that the RICO claims are untimely.

With respect to Plaintiff's § 1983 claim, Defendants further contend that Plaintiff failed to identify any constitutionally protected right that was violated and failed to establish that Defendants acted under color of state law.

All Defendants likewise argue that Plaintiff's malicious prosecution claim is partially time barred, and otherwise must fail for lack of the requisite element of seizure of a person or property. In his memorandum opposing the motions to dismiss, Plaintiff suggests that his complaint also contains a viable state law claim for abuse of process. (*See* Doc. 10, p. 14). In replying, Defendants further claim that Plaintiff failed to raise a claim for abuse of process, and contend that such a claim would be both unsupportable and partially time barred.

Defendant Jung, however, also claims that Plaintiff cannot establish that he was responsible for instituting any civil action against Plaintiff—another requisite element of a malicious prosecution claim—and that Plaintiff's suit against Jung in his official capacity is in fact a suit against the United States, which is barred by sovereign immunity.

### OPINION

### Standard of Review on Motions to Dismiss

The federal rules permit a court to dismiss a complaint before trial for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, a court must take all of the plaintiff's allegations as true and must resolve all doubts in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489 (6th Cir.1990). The complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court in *Scheuer* continued:

> Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss ..., the

allegations of the complaint should be construed favorably to the pleader.

*Id.*

### Sufficiency of Plaintiff's RICO Claim

Plaintiff's complaint purports to set forth a claim under 18 U.S.C. § 1962(c), which provides in pertinent part as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

In addition to its criminal application, the RICO statute allows persons injured by racketeering activity to maintain private actions. 18 U.S.C. § 1964(c).

■ To establish a violation under 18 U.S.C. § 1962(c), a civil plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). A complaint advancing a § 1962(c) claim must include factual allegations supporting each element of the violation with reasonable specificity. *Jennings v. Emry,* 910 F.2d 1434, 1435 (7th Cir.1990).

■ The "conduct" prong recently has been defined to require that a particular defendant "must participate in the operation or management of the enterprise itself" in order for § 1962(c) liability to attach. *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). As another court reasoned:

Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise.

*University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir. 1993).

■ "Enterprise" is defined within the RICO statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). No corporation can be "both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Davis v. Mutual Life Ins. Co. of New York,* 6 F.3d 367, 377 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1298, 127 L.Ed.2d 650 (1994). The enterprise must be "a separate, ongoing" entity. *Hofstetter v. Fletcher,* 905 F.2d 897, 903 (6th Cir.1988). The definition encompasses both illegitimate enterprises *and* legitimate enterprises involved in racketeering operations. *United States v. Qaoud,* 777 F.2d 1105, 1115 (6th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 899 (1986).

■ A "pattern," as that term is used in the RICO statute, requires at least two qualifying acts occurring within 10 years of one another. 18 U.S.C. § 1961(5). But "while two acts are necessary, they may not be sufficient." *Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285, n. 14. As the Court there further explained:

Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern . . . *"[C]ontinuity plus relationship . . . combine[ ] to produce a pattern."*

*Id.* (quoting S.Rep. No. 91–617, p. 158 (1969)).

■ Finally, "racketeering activity" consists of any one of a lengthy list of indictable state and federal offenses, including but not limited to mail fraud and wire fraud, as enumerated in 18 U.S.C. § 1961(1). Pursuant to Fed.R.Civ.P. 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Accordingly, allegations of fraud which are "merely bare assertions of legal conclusions" will not satisfy the requirements of a RICO claim. *Condor America, Inc. v. American Power Development, Inc.,* 128 F.R.D. 229, 232 (S.D.Ohio 1989) (Rubin, J.).

Defendants generally aver that Plaintiff's allegations are insufficient to support the

existence of *any* of the requisite RICO elements. Accordingly, the Court will address each separately.

### A. *Enterprise*

■ All Defendants urge the Court to find that Plaintiff has failed to identify any entity that qualifies as an "enterprise" for purposes of the RICO statute. On that subject, Plaintiff's complaint avers as follows:

> The Defendants are collectively an enterprise engaged in activities which affect interstate commerce, to wit: individuals affiliated with corporations established under the law of the State of Ohio.

(Doc. 1, ¶ 19). Beyond that bare allegation, however, the complaint sheds no further light on the nature or scope of the purported enterprise.

Despite the vagueness of the enterprise contention in his complaint, Plaintiff's memorandum opposing the motions to dismiss is somewhat more specific, arguing that he "has alleged the existence of an enterprise, to wit: HOME. It could also include individuals." (Doc. 10, p. 6). Although he acknowledges that HOME's "ascertainable structure" is "an enterprise designed to improve housing opportunities," Plaintiff suggests that Irvine, as the executive director of HOME, and Bohlen and Mooney, as attorneys employed by HOME, acted in concert with others to use the enterprise to advance frivolous lawsuits against Plaintiff. (*See* Doc. 10, pp. 6–7). In support of that contention, he offers the affidavits of various individuals, attesting that Mooney, Bohlen and/or Irvine, acting on behalf of HOME and/or with funds presumably made available through HALF, solicited Plaintiff's tenants to bring harassment complaints against him, and offered payment in exchange for any such complaints. (*See* exhibits to Doc. 23).

Although Plaintiff's complaint itself does not clearly delineate the scope or the nature of the "enterprise" that is the subject of Plaintiff's RICO claim, the "enterprise" alluded to in his opposing memorandum, as supported by affidavits, does not lend itself to easy characterization. Though vague, Plaintiff's complaint can be interpreted to imply that the "enterprise" was a nameless alliance among HOME, HALF, Irvine, Bohlen, Mooney and others, including those [such as the Pattersons] who lodged harassment complaints against Plaintiff.

In light of the difficulty implicit in describing any such intangible entity, the Court is reluctant to dismiss the complaint based upon Plaintiff's failure to better articulate the identity of the RICO enterprise. Under such circumstances, the preferable approach would be for Plaintiff to amend his complaint, to better apprise Defendants of the claims against them. Although the pending motions to dismiss apparently have not motivated Plaintiff to take advantage of the amendment option, the Court nonetheless determines that the allegations of Plaintiff's complaint, as further expanded upon through Plaintiff's memorandum and affidavits, sufficiently identify the enterprise to satisfy notice pleading requirements.

### B. *Conduct*

■ Pleading the existence of a legally sufficient enterprise, however, does not end the Court's inquiry into the enterprise. Certain Defendants contend that even if an "enterprise" existed, they lacked sufficient powers of management or control over the enterprise's activities to be liable therefor.

Plaintiff has addressed that contention sufficiently as to Defendants Mooney and Bohlen. Said Defendants' efforts to characterize themselves as mere outside legal counselors with limited involvement in HOME's operations are undercut by affidavits which portray them as actively soliciting sexual harassment complaints against Plaintiff from his tenants. (*See* Doc. 23, Affidavits of Donna Gillard, Stephanie Weaver, Blanche Tangie Smith, Phillip Randle). Whether Plaintiff can *prove* those charges is another matter; for present purposes, the affidavits are sufficient to suggest that Defendants Mooney and Bohlen played a significant role in the operation of the enterprise as alleged. Ironically, the following excerpt from the *Reves* decision cited by Defendants themselves is particularly instructive on that point:

> An enterprise is "operated" not just by upper management but also by lower-rung

participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it *as, for example, by bribery.*

*Id.,* —— U.S. at ——, 113 S.Ct. at 1173 (emphasis added).

Attempted bribery is precisely the nature of the racketeering activity in which Plaintiff alleges that Mooney and Bohlen engaged. Were the courts to treat such conduct as being outside of the scope of an enterprise's operation and management, low-level operatives responsible for carrying out much of a racketeering entity's "dirty work" could never be held responsible for their actions under the RICO statute. This Court does not believe that the *Reves* holding was intended to yield such a result.

■ Even under the broad latitude that the Court has allowed, however, Plaintiff's description of the RICO enterprise does *not* subject Defendant Jung to liability. Although Plaintiff's complaint identifies Defendant Jung as being affiliated with the United States Department of Housing and Urban Development ["HUD"], nowhere does it indicate Defendant Jung's supposed role in the RICO enterprise (*see* Doc. 1, p. 1 & ¶ 9), except to suggest that Jung either "facilitated" or "furthered" the enterprise's activities.

In an affidavit offered to support his motion for summary judgment, Defendant Jung avers that his sole possible connections to this matter are: 1) that in 1984, he investigated two fair housing complaints filed with HUD, alleging sexual harassment by Plaintiff, and 2) that in 1992, he responded to an inquiry by Defendant Bohlen, on behalf of Defendants Patricia and Jonathan Patterson, by referring Bohlen to HUD's regional office or national headquarters for copies of files from HUD's 1984 investigations of the complaints against Plaintiff. (Doc. 5, Affidavit of Charles Jung, ¶¶ 3–4).

Like Plaintiff's complaint, Plaintiff's memorandum in opposition to Defendant Jung's motion provides no insight into Defendant Jung's supposed role in the RICO enterprise. (*See* Doc. 10, pp. 6–7). Plaintiff's gratuitous reference to an unpublished appellate opinion critical of Jung's handling of other, unrelated Fair Housing Act matters is simply irrelevant to the issue of Jung's role in the enterprise alleged in this matter. (*See* Doc. 10, p. 12). Moreover, the affidavits that Plaintiff has produced make only passing, non-incriminatory references to Jung.[1] Plaintiff thus has come forward with nothing to refute Defendant Jung's affidavit regarding his limited role in this matter, and nothing of record would support an inference that Defendant Jung was an active participant with the power to manage or control any RICO enterprise as described by Plaintiff.

Accordingly, while the enterprise allegations of Plaintiff's complaint are minimally sufficient to survive a motion to dismiss as to Defendants Mooney, Bohlen, Irvine, HOME and HALF, such allegations will *not* support a RICO claim against Defendant Jung. Defendant Jung's motion for summary judgment on that basis therefore is well taken.

### C. *Pattern*

■ Defendants also contend that Plaintiff has failed to demonstrate either the continuity of or the relationship between any alleged acts of racketeering activity, as is necessary in order to establish a *pattern* of such activity. Plaintiff's complaint alleges that "[b]eginnning in 1984 and continuing thereafter," Defendants sought to injure Plaintiff through a pattern of conduct involving the pursuit false allegations of sexual harassment against Plaintiff. (Doc. 1, ¶ 13). Defendants do not deny that HOME has played some role in four sexual harassment actions brought against Plaintiff, two in 1984 and two in 1992. Additionally, Plaintiff has submitted affidavits suggesting that certain Defendants also solicited other complaints from other tenants, in an effort allegedly aimed at de-

---

1. Of the three affidavits that mention Defendant Jung, two aver that the affiants provided information to Jung regarding certain tenants' actions in bringing sexual harassment charges against Plaintiff (Doc. 23, Affidavits of Michael Pearcill and Jeanette Bullock), and the third states that the affiant appeared with Plaintiff before Defendant Jung to testify regarding his knowledge of certain tenants' actions in the same context. (Doc. 23, Affidavit of Rev. Morris W. Fleming).

priving Plaintiff of his rental properties. (*See* affidavits attached to Doc. 23).

As such allegations imply that Defendants' purported actions were continuing in nature *and* were interconnected as part of a persistent effort to take possession of Plaintiff's rental properties, the allegations are sufficient for purposes of the present motions to support the existence of a "pattern" of activity. Again, however, the Court at this time is not called upon to judge either the merit of or Plaintiff's ability to prove those allegations. Additionally, the "pattern" thus established must be one of "racketeering· activity"—the next element that the Court will address—in order to support a RICO claim.

### D. *Racketeering Activity*

■ Plaintiff's complaint identifies Defendants' "predicate acts" allegedly constituting racketeering activity as follows:

A. A systematic scheme or artifice to bribe individuals to give false testimony against the Plaintiff in violation of law.

B. A systematic scheme or artifice to use the United States mail to violate the law.

C. A systematic scheme or artifice to obtain $600,000.00 of property by means of false or fraudulent pretenses, representations and promises.

D. A systematic scheme or artifice of corruption through the abuse of the judicial process to violate the civil rights of the Plaintiff.

(Doc. 1, ¶ 21). Again, Plaintiff's opposing memorandum and the affidavits offered in support thereof elaborate somewhat upon those sketchy contentions, describing a scheme whereby Defendants allegedly collaborated to take possession of Plaintiff's rental properties by bribing tenants to advance false sexual harassment complaints and lawsuits against Plaintiff. (*See* Docs. 10, 23).

The RICO statute enumerates an explicit and exhaustive list of "predicate acts" that may constitute racketeering activity for purposes of RICO liability. 18 U.S.C. § 1961(1). Nowhere does that list mention anything resembling two of Plaintiff's proffered "predicate acts"—abuse of the judicial process in order to violate civil rights, or scheming to deprive another · of property by means of false or fraudulent pretenses, representations and promises—as recognized forms of racketeering activity violative of RICO. Indeed, at least one federal appellate court has stated specifically that "violations of civil rights and constitutional law ... are not predicate acts under RICO," and that allegations of such violations therefore are "irrelevant" in the context of RICO. *Jennings*, 910 F.2d at 1438. This Court finds that reasoning persuasive. Accordingly, even assuming that Plaintiff could prove that Defendants had conspired to violate Plaintiff's recognized civil rights, such conspiracy would not constitute a predicate act for purposes of RICO liability. Similarly, the nebulous fraud alleged to have been intended to deprive Plaintiff of property does not amount to racketeering activity that will support a civil RICO action.

■ Plaintiff's remaining allegations of "predicate acts" are less easily dismissed. Mail fraud, for example, *is* a recognized predicate act as defined by RICO. *See* 18 U.S.C. § 1961(1)(B) (citing 18 U.S.C. § 1341). The United States Code defines mail fraud as follows, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both....

18 U.S.C. § 1341. The prohibition thus encompasses nearly any use of the U.S. mails intended to further a fraudulent scheme.

Aside from his conclusory allegation that Defendants engaged in mail fraud, however,

Plaintiff has provided no details (*i.e.*, who, where, when or how) regarding Defendants' supposed use of the mails in furtherance of their purported scheme. As previously noted, the Federal Rules of Civil Procedure specifically require that "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). This Court previously has held that "at a minimum," a plaintiff must identify "the time, the place, or the content of any fraudulent statement made via wire or mail" in order to maintain a RICO claim. *Condor*, 128 F.R.D. 229 (S.D.Ohio 1989). Plaintiff simply has failed to meet that threshold in his complaint.

Additionally, Plaintiff has failed to demonstrate or even intimate that he relied upon any falsity that Defendants communicated by mail. Some cases suggest that such reliance likewise is a prerequisite to a RICO mail fraud claim. *See Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir.1987); *Central Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir.1993).

Although this Court already has granted Plaintiff substantial leeway to flesh out his skeletal pleadings through information provided in response to Defendants' motions to dismiss (*see supra*), nothing set forth in Plaintiff's opposing memorandum or supporting affidavits provides any further insight into his conclusory mail fraud averment. As Plaintiff's mail fraud allegation is no more than a "mere[ ] bare assertion[ ] of [a] legal conclusion[ ]," *see Condor America*, 128 F.R.D. at 232, Defendants' motion to dismiss must be granted as to that particular claim.

▉ Finally, Plaintiff contends that Defendants violated RICO by scheming to bribe individuals to give false testimony against him. RICO recognizes several forms of racketeering activity consisting of bribery: 1) any act or threat involving bribery which is chargeable under State law and punishable by imprisonment for more than one year; 2) any act which is indictable under 18 U.S.C. § 201 (relating to bribery); and 3) any act which is indictable under 18 U.S.C. § 224

(relating to sports bribery). 18 U.S.C. § 1961(1)(A), (B).

Clearly, 18 U.S.C. § 224's prohibition on bribery in sporting contests is inapplicable to Plaintiff's allegations. Section 201, however, proscribes bribery of public officials and *witnesses* in the following pertinent language:

(c) Whoever—

\* \* \* \* \* \*

(2) directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, ... or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony ...

\* \* \* \* \* \*

shall be fined under this title or imprisoned for not more than two years, or both. 18 U.S.C. § 201(c)(2).

Plaintiff's complaint, coupled with his memorandum opposing the motions to dismiss and his supporting affidavits, contends that Defendants offered rent allowances or other material incentives to induce Plaintiff's tenants to make false accusations of sexual harassment against Plaintiff. Although Plaintiff does not explicitly so state, the materials he has produced are sufficient to imply that such inducements were intended to evoke testimony before federal agencies (*e.g.*, HUD) and/or state or federal courts, where various harassment complaints against Plaintiff in fact were brought. Moreover, although Plaintiff's existing allegations arguably could be insufficient to suggest that Defendants sought to elicit *false* testimony against Plaintiff, under 18 U.S.C. § 201(c)(2), Defendants apparently could commit an offense even if they offered rental assistance only to secure *truthful* testimony against Plaintiff. Plaintiff's bribery contentions therefore allege a RICO predicate act sufficient to survive a motion to dismiss.[2]

---

**2.** The Court notes in passing that the conduct described in Plaintiff's bribery allegations also might suffice to establish other recognized predicate acts, including bribery in violation of state law [*see* 29 Ohio Rev.Code § 2921.02(C), (E) and

Accordingly, as to all Defendants except Defendant Jung, the Court concludes that Plaintiff has stated a RICO claim legally sufficient to survive a motion to dismiss. In so holding, however, the Court passes no judgment on the merit of that claim, and indeed reminds Plaintiff that all such legal assertions must be supported by competent factual evidence in order to avoid a directed verdict and the possible consequences of Fed. R.Civ.P. 11.

### Timeliness of Plaintiff's RICO Claim

■ The statute of limitations applicable to civil RICO actions is four years. *See Caproni v. Prudential Sec., Inc.*, 15 F.3d 614, 619 (6th Cir.1994). Defendants contend that Plaintiff's cause of action against them accrued no later than late 1984 or 1985, and that the relevant statutory period therefore had run before Plaintiff filed this action. Defendants acknowledge, however, that the running of the limitations period is tied to the Plaintiff's *discovery* of the scheme against him. *See Agristor Fin. Corp. v. VanSickle*, 967 F.2d 233, 240–41 (6th Cir.1992); *Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir. 1988).

■ While the Court agrees that Plaintiff must have been aware in 1984·of the harassment actions then pending against him, we cannot conclude that Plaintiff also realized at that time that such harassment actions were the product of the RICO conspiracy that he now alleges. The issue of when Plaintiff discovered that this purported conspiracy was responsible for instigating the complaints against him implicates a factual question not appropriate for resolution on a motion to dismiss.

In addition, Defendants find themselves in the dubious position of arguing that in 1984, Plaintiff should have recognized a "pattern" of behavior attributable to Defendants, although Defendants themselves contend that even the 1984 complaints and 1992 complaints combined are insufficient to constitute a "pattern" for purposes of RICO liability. This Court declines to conclude from the evidence now before it that the incidents of 1984 alone were enough to put Plaintiff on

notice of the existence of a RICO conspiracy. Defendants' motion to dismiss the RICO claims as untimely therefore is denied.

### Sufficiency of Plaintiff's 42 U.S.C. § 1983 Claim

■ In order to maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must establish the following two elements:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970) (footnote and citations omitted).

■ In pleading a claim under 42 U.S.C. § 1983, Plaintiff avers that Defendants acted "in consort [sic] ... under the color of state law to violate [his right to] life, liberty and the pursuit of happiness." (Doc. 1, ¶ 26). As with Plaintiff's RICO claim, the complaint provides no further details regarding the nature of the supposed violation, although it does suggest that use of the courts and of Defendants Mooney's and Bohlen's licenses to practice law constituted the state action necessary to invoke § 1983. (*Id.*). In his memorandum opposing the motions to dismiss, however, Plaintiff advances a different approach, arguing that Defendants' alleged conspiracy with Defendant Jung, a HUD employee, was sufficient to establish that even the private defendants acted under color of state law for purposes of § 1983 liability. (Doc. 10, pp. 10–11).

The moving Defendants argue that none of them are subject to liability under 42 U.S.C. § 1983. They first argue that Plaintiff has failed to articulate how he was deprived of any right secured by the Constitution or federal law, instead referring to guarantees enunciated in the non-statutory Declaration of Independence. They further argue that

29 Ohio Rev.Code § 2929.11(B)(6), (C)(3) ]. *See*

18 U.S.C. § 1961(1)(A).

as private individuals and a federal employee [Jung], they could not have acted under color of state law with respect to any action that they took.

■ Defendants correctly observe that Plaintiff has failed to identify any legally cognizable federal constitutional or statutory right that Defendants are alleged to have denied him. Even assuming that such defect could be corrected by more artful pleading, however, Plaintiff cannot overcome his inability to demonstrate that these Defendants acted under color of state law.

The status of Bohlen and Mooney as attorneys does not render their conduct "state action." The Supreme Court has determined that even court-appointed public defenders paid by the state do not act under color of state law for purposes of § 1983 liability. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). This Court likewise has recognized that "[p]rivately-retained attorneys do not act 'under color of state law' pursuant to § 1983, and their acts do not constitute 'state action' for purposes of the Fourteenth Amendment." *Border City Sav. & Loan Ass'n v. Kennecorp Mortgage & Equities,* 523 F.Supp. 190, 193 (S.D.Ohio 1981) (Rice, J.). Similarly, a private party's use of the state judicial system does not constitute state action under 42 U.S.C. § 1983. *See Dunwoody Homeowner's Ass'n v. DeKalb County,* 887 F.2d 1455, 1461 (11th Cir.1989); *Tunstall v. Office of Judicial Support,* 820 F.2d 631 (3d Cir.1987).

■ Apparently recognizing the futility of the arguments thus suggested in his complaint, Plaintiff in his opposing memorandum instead urges that Defendant Jung is the state actor whose participation in the alleged conspiracy implicates § 1983. This Court already has found that Plaintiff's complaint insufficiently identifies Defendant Jung's role in any RICO conspiracy, a defect which also plagues his § 1983 conspiracy allegations. However, even if Plaintiff was to adequately articulate Jung's part in the alleged § 1983 conspiracy, and was able to surmount Jung's claimed immunity as well, Plaintiff still would confront the problem of Jung's position as a *federal* rather than state actor.

In his affidavit, Defendant Jung avers that any action he took with respect to Plaintiff was taken in his official capacity as an investigator for HUD. (Doc. 5, Jung Affidavit). Plaintiff has offered nothing to refute that claim, which otherwise appears to be credible. As § 1983 does not apply to actions taken under *federal* law, *see District of Columbia v. Carter,* 409 U.S. 418, 429–30, 93 S.Ct. 602, 608–09, 34 L.Ed.2d 613 (1973); *Sorrells v. Gattison,* 644 F.Supp. 124 (N.D.Ohio 1986), Plaintiff cannot rely upon Defendant Jung's alleged participation in the conspiracy to impute "state action" to Defendants. *See also Walber v. United States Dep't of Hous. & Urban Dev.,* 897 F.2d 530 (unpublished), 1990 WL 19665, 1990 U.S.App. LEXIS 3202 (6th Cir.1990) ("HUD, of course, is a federal agency, operating under color of federal rather than state law; section 1983 hence is unavailable on these facts."). Plaintiff therefore has failed to state a claim under 42 U.S.C. § 1983, and such claim should be dismissed.

### Sufficiency of Plaintiff's Malicious Prosecution Claim

■ Under Ohio law, a claim of malicious prosecution consists of four elements: 1) malice in instituting or continuing to prosecute the underlying action; 2) lack of probable cause; 3) termination of the underlying action in favor of the plaintiff; and 4) arrest of the plaintiff or seizure of his property in the underlying action. *Trussell v. General Motors Corp.,* 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990). Although the Court in *Trussell* conceded that arrest or seizure would not be required to prove malicious *criminal* prosecution, it observed that the requirement of an arrest or seizure in *civil* actions for malicious prosecution had been preserved in *Crawford v. Euclid Nat'l Bank,* 19 Ohio St.3d 135, 139, 483 N.E.2d 1168 (1985). *Trussell,* 53 Ohio St.3d at 144, 559 N.E.2d 732.

■ Plaintiff unquestionably prevailed in the civil sexual harassment actions instituted against him, and the issues of malice and probable cause clearly implicate factual questions to be resolved by the trier of fact. Defendants nonetheless argue that Plaintiff

cannot establish the requisite element of arrest or seizure.

In response to Defendants' motions, Plaintiff argues that a "seizure" of his property occurred when "rents otherwise due to Plaintiff were withheld." (Doc. 10, p. 14). Once again, Plaintiff fails to provide the other parties or the Court with minimally adequate information regarding his allegations. This Court therefore is unable to determine whether any such rents were withheld pursuant to court order; merely at the discretion of individual tenants, as Defendants suggest (see Doc. 19, p. 10); or as a result of some other action attributable to Defendants. Given that Plaintiff has suggested some obscure indicia of a "seizure," however, the Court is reluctant to summarily conclude that Plaintiff has failed to establish that requisite element of his malicious prosecution claim. The Court therefore holds that Plaintiff's malicious prosecution claim is sufficient, however marginally, to survive a motion to dismiss at this juncture. Plaintiff must be prepared to come forward with competent factual evidence of a seizure of property, however, to avoid a later adverse judgment on that claim.

■ As to Defendant Jung, however, Plaintiff's failure to refute Defendant Jung's affidavit regarding his limited role in this matter is as fatal to Plaintiff's malicious prosecution claim as it was to his RICO claim. Nowhere does Plaintiff even attempt to explain how Jung, as a federal employee of HUD, was or could have been responsible for the allegedly malicious prosecution of actions against him. Accordingly, summary judgment is appropriate as to the malicious prosecution claim against Defendant Jung.

### Timeliness of Plaintiff's Malicious Prosecution Claim

■ Ohio Rev.Code § 2305.11(A) provides that an action for malicious prosecution must be initiated within one year after the cause of action accrues. Case law establishes that a malicious prosecution cause of action accrues when the underlying legal proceeding terminates in favor of the plaintiff. *Francis v. City of Cleveland,* 78 Ohio App.3d 593, 597, 605 N.E.2d 966 (Cuyahoga Cty. 1992).

As Plaintiff's complaint reveals, two of the actions on which his malicious prosecution claim is based were resolved in his favor on October 17, 1984, and March 14, 1985, respectively. (Doc. 1, ¶ 34). By Plaintiff's own admission, then, any cause of action thereon accrued more than one year before the May 9, 1994 filing of this action. (*See* Doc. 1). Accordingly, Plaintiff's malicious prosecution claim must be dismissed as time barred as to those two incidents. Only the sexual harassment proceedings that terminated in this Court and in the Hamilton County Municipal Court in April 1994 may serve as the basis for malicious prosecution claims.

### Sufficiency of Plaintiff's Abuse of Process Claim

■ Abuse of process is defined under Ohio law as including: 1) the use of legal process with an ulterior motive; and 2) the intentional or willful commission of some further act in the use of process that would not be proper in the regular conduct of the proceeding initiated. *Clermont Environmental Reclamation Co. v. Hancock,* 16 Ohio App.3d 9, 11, 474 N.E.2d 357 (Clermont Cty.1984).

■ In the "Third Claim for Relief" of his complaint, Plaintiff sets forth what appears to be a claim purely for malicious prosecution. (*See* Doc. 1, ¶¶ 28–35). The claim is couched in terms of "probable cause," "malice" and "prosecuting" (*see* Doc. 1, ¶¶ 32, 33, 34. 35), and includes no references to such concepts as "ulterior purpose," "intent," "willfulness," "abuse" or even "process."

In his memorandum opposing Defendants' motions to dismiss, however, Plaintiff defended the viability of his "abuse of process" claim. (*See* Doc. 10, pp. 13–14). None of Defendants had moved to dismiss any such "abuse of process" claim. (*See* Docs. 2, 4, 5). Indeed, the Court concludes that a fair reading of Plaintiff's third claim for relief would interpret such claim to be one for malicious prosecution and not for abuse of process, and that no other portion of Plaintiff's complaint can be fairly read to set forth an abuse of process claim. Under such circumstances, the Court can only conclude that Plaintiff is attempting to raise an abuse of process claim

for the first time in his memorandum opposing the motions to dismiss. That the Plaintiff cannot do.

Although this Court thus far has granted Plaintiff wide latitude to use his opposing memorandum as a device to expand upon and even salvage the sketchy allegations of his complaint, we draw the line at allowing Plaintiff to employ that memorandum to *introduce* claims not even intimated at in his pleading. Having had the benefit of Defendants' coaching regarding defects inherent in the sole state law claim he raised, Plaintiff cannot now stave off dismissal and contravene the amendment procedure by construing his own words in a way that defies logic.

Defendants need not move to dismiss a claim that has never been properly raised; Plaintiff cannot raise a claim by insisting that his allegations support a cause of action that is not readily apparent from the face of his pleading. Accordingly, while the Court determines that Plaintiff has not pleaded a proper abuse of process claim, that determination is without prejudice to Plaintiff's right to move for leave to amend his complaint in order to add such a claim, as the Court cannot address the merits of a claim not properly before it.

### Immunity of Defendant Jung

Having determined that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendant Jung as to all claims, the Court is spared the necessity of exploring the more complex question of whether and/or the extent to which Defendant Jung is entitled to immunity from Plaintiff's claims. The Court nonetheless observes that Plaintiff's complaint does not appear to adequately articulate a *Bivens*-type action against Defendant Jung individually, *see Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and that the judgment in favor of Defendant Jung might be supportable on a sovereign immunity as well. *See, e.g., Atkinson v. O'Neill,* 867 F.2d.589, 590 (10th Cir.1989) ("It is well settled that the United States and its employees, sued in their official capacities, are immune from suit unless sovereign immunity has been waived").

### Defendants Bohlen's and Mooney's Motion for Sanctions

 Finally, the Court must address Defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11. (Doc. 7). Rule 11 provides that a court may sanction an attorney or a law firm for presenting a pleading that contains claims or other legal contentions that are not "warrranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2), (c). Despite that broad authority, this Court has long subscribed to the notion that sanctions should be imposed for *persisting* in a claim after its meritlessness becomes obvious, rather than for merely pleading a claim that eventually proves to be meritless.

In this matter, although Defendants have succeeded in having certain of Plaintiff's claims stricken, significant portions of Plaintiff's complaint have survived Defendants' motions to dismiss. Given that the parties apparently have not yet had an opportunity to engage in meaningful discovery regarding the remaining claims, the Court finds that sanctions would be premature at this juncture. This denial of Defendants' motion, however, is without prejudice to their right to renew such motion should Plaintiff subsequently appear to be pursuing claims which he should be aware lack merit.

IT THEREFORE IS ORDERED that Defendant Jung's motion for summary judgment (Doc. 5) hereby is GRANTED in its entirety; and that Defendants Bohlen's and Mooney's and Defendants Irvine's, HOME's and HALF's motions to dismiss (Docs. 2, 4) hereby are GRANTED IN PART and DENIED IN PART. Said motions are GRANTED to the extent that they seek dismissal of Plaintiff's 42 U.S.C. § 1983 claim and portions of Plaintiff's RICO and malicious prosecution claims, as further identified *supra,* and are DENIED to the extent that they seek dismissal of the remaining portions of Plaintiff's RICO and malicious prosecution claims, as further identified herein.

IT FURTHER IS ORDERED that Defendants Mooney's and Bohlen's motion for sanctions (Doc. 7) hereby is DENIED, with-

out prejudice to said Defendants' right to resubmission.

IT IS SO ORDERED.